```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
UNITED STATES OF AMERICA,             :
                                      :
                    Government,       :    19 CR. 490 (RMB)
                                      :
        - against -                   :    ORDER
                                      :
JEFFREY EPSTEIN,                      :
                    Defendant.        :
-----------------------------------------------------------x
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/15/19

The Clerk is respectfully requested to docket the enclosed documents which were discussed at today's bail hearing.

Dated: New York, New York
       July 15, 2019



RICHARD M. BERMAN
U.S.D.J.

```
 1  SUPREME COURT        NEW YORK COUNTY
    TRIAL TERM           PART 66
 2  ------------------------------x
    THE PEOPLE OF THE STATE OF NEW YORK : INDICTMENT #
 3                                      : 30129/2010
 4           AGAINST
 5  JEFFREY EPSTEIN
                Defendant.
 6  ------------------------------x  SORA HEARING
 7
                    111 Centre Street
 8                  New York, New York 10013
                    January 18, 2011
 9
10  B E F O R E:
11
                HONORABLE RUTH PICKHOLZ
12                Justice of the Supreme Court
13
14  A P P E A R A N C E S:
15
    For the People:    CYRUS R. VANCE, JR., ESQ.,
16                     New York County District Attorney
                       One Hogan Place
17                     New York, New York 10013
                       BY:  JENNIFER GAFFNEY, ESQ.
18                     Assistant District Attorney
19  For the Defense:   KIRKLAND & ELLI, LLP
20                     153 East 53rd Street
                       New York, New York 10022
21                     BY:  JAY LEFKOWITZ, ESQ.
                            SANDRA MUSUMECI, ESQ.
22
23
                            Vikki J. Benkel
24                          Senior Court Reporter
25
```

1   COURT CLERK: This is number two on the calendar,
2   matter of Jeffrey Epstein.
3   Your appearances please.
4   MS. GAFFNEY: Jennifer Gaffney for the People.
5   Good afternoon, Your Honor.
6   MR. LEFKOWITZ: Jay Lefkowitz and Sandra Musumeci
7   for Mr. Epstein.
8   THE COURT: Mr. Epstein is not here.
9   MR. LEFKOWITZ: That's correct.
10  THE COURT: Are you waiving his appearance?
11  MR. LEKWOWITZ: Yes.
12  MS. GAFFNEY: Your Honor, this case is on for a
13  SORA hearing this afternoon.
14  The People did receive the board's recommendation
15  of a Level Three. However, we received the underlying
16  information from them and also had some contact with
17  Florida, and we don't believe that we can rely on the entire
18  probable cause affidavit.
19  I don't know if the board sent that to you as
20  well.
21  THE COURT: I don't know why you cannot rely on
22  it.
23  MS. GAFFNEY: Because in Florida of all of the
24  victims in that probable cause affidavit, they actually only
25  went forward on one case. There was only an indictment for

1  one victim and that is what the defendant plead to.
2           So it is unlike a situation where everything was
3  indicted and then we get to sort of assess points for all of
4  the victims, if it was part of a plea bargain. They did not
5  actually choose to go forward on any except for the one
6  victim.
7           So under the board guidelines, the risk assessment
8  interim guidelines, it actually says, you know, by way of
9  contrast if an offender is not indicted for an offense, it
10 is strong evidence that the offense did not occur and I
11 don't think --
12          THE COURT: Do you find that if somebody is not
13 indicted it is strong evidence that it did not occur?
14          MS. GAFFNEY: I don't know that we can rely on it
15 as clear and convincing evidence if the prosecutor's office
16 never went forward on it. The prosecution said that the
17 victims, although they spoke to the police early on, did not
18 cooperate with them. So we don't have any follow up
19 information.
20          THE COURT: But the board found a Level Three.
21          I have to tell you, I am a little overwhelmed
22 because I have never seen the prosecutor's office do
23 anything like this. I have never seen it. I had a case
24 with one instance it was a marine who went to a bar, and I
25 wish I had the case before me, but he went to a bar and a 17

1   year old, he was an adult obviously, he was a Marine, a 17
2   year old came up to him and one thing lead to another and he
3   had sex with her and the People would not agree to a
4   downward modification on that.
5          So I am a little overwhelmed here because I see --
6   I mean I read everything here, I am just a little
7   overwhelmed that the People are making this application.
8          I could cite many many, I have done many SORAs
9   much less troubling than this one where the People would
10  never make a downward argument like this.
11         MS. GAFFNEY:  I agree with Your Honor, it is
12  incredibly unusual for us to make a downward argument.  But
13  the problem is the one thing that we have from the board is
14  it seems to be in contradiction to their own guidelines
15  which if something was not indicted, you are not supposed to
16  rely on it.
17         THE COURT:  They obviously took that into
18  consideration.
19         MS. GAFFNEY:  And I tried to reach -- I reached
20  the authorities in Florida to try to see if they had all the
21  interview notes or other things that we can then
22  subsequently rely on that might be considered clear and
23  convincing evidence, if they had interviewed these women on
24  their own, and they never did.  No one was cooperative and
25  they did not go forward on any of the cases and none of them

*Vikki J. Benkel*
*Senior Court Reporter*

1  were indicted. So I don't know.
2              THE COURT: And you spoke to the prosecutor?
3              MS. GAFFNEY: The actual prosecutor left the
4  office. I spoke to the prosecutor that took over the case.
5              THE COURT: Maybe you can find the prosecutor that
6  left the office.
7              You have done more in other cases looking into it.
8  I have never seen the prosecutor's office do this. I have
9  to tell you, I am shocked.
10             MS. GAFFNEY: Right, but I spoke to the prosecutor
11 that took over the case and they don't have anything, any
12 affidavits, any statements, any notes.
13             THE COURT: Why don't you speak to the prosecutor
14 that did do the case, I am sure you could find that
15 prosecutor.
16             MS. GAFFNEY: I can find her, but based upon what
17 the other prosecutor said, they did not speak to that
18 prosecutor either.
19             THE COURT: You did not speak to the prosecutor
20 yourself, you did not speak to them, that is hearsay. You
21 did not speak to the prosecutor that handled the case.
22             MS. GAFFNEY: That's right.
23             THE COURT: I don't think you did much of an
24 investigation here.
25             MS. GAFFNEY: I mean I called the prosecutor.

*Vikki J. Benkel*
*Senior Court Reporter*

1  Even though the first prosecutor left, presumably the
2  prosecutor's office has the file.
3          THE COURT:  I would still call the prosecutor.
4          MS. GAFFNEY:  Anything from these women they would
5  have forwarded it to us.
6          THE COURT:  I don't know that, I think you have to
7  speak to the prosecutor.
8          But be that as it may, I hear your argument.
9          Anything else?
10         MS. GAFFNEY:  I mean that is why I don't think we
11 can, I don't think we are entitled to rely on this because
12 they did not go forward.
13         THE COURT:  The board made a recommendation.
14         MS. GAFNEY:  Correct.
15         MS. MUSUMECI:  May I speak, Your Honor?
16         THE COURT:  Yes.
17         MS. MUSUMECI:  Good afternoon.
18         I would like to bring a few additional points to
19 Your Honor's attention that don't come across in the board
20 recommendation.
21         The first is that Mr. Epstein is not a resident of
22 New York, unlike most of these out of state, he has not
23 changed his address and moved to New York, he maintains a
24 vacation home in New York.  His primary residence is the
25 U.S. Virgin Islands.

*Vikki J. Benkel*
*Senior Court Reporter*

He is registered in the U.S. Virgin Islands, he has been since his release from jail. He notifies the Virgin Island authorities every time he leaves that jurisdiction. Virgin Island authorities rated him at the lowest level of registration.

He also registered in Florida, which is the state of this particular offense, and the only reason that this conviction is even before Your Honor.

The offense for which he was convicted is not a registrable offense in New York. He is only registrable here arguably because based on the provision of SORA that says if a crime is registrable in the state of conviction, then it is registrable here in New York. And the Florida authorities that considered that rated him at the lowest level of their SORA statute.

He additionally has a vacation home in New Mexico and is registered in New Mexico. The New Mexican authorities when they considered his offenses, determined he need not register at all. Nevertheless, he has voluntarily registered with New Mexico and maintains that registration.

Additionally, because of his possession of a vacation home in New York, he has been voluntarily registered with New York SOMU, the Sex Offender Monitoring Unit since May of this year. He notifies them whenever he comes to travel to New York. He never comes to New York for

more than seven days or at least he has not since he has been registered. He has no intention to ever be here for longer than a period of ten days.

Like I said, he does notify the authorities when he is here. He fully understands the reason for voluntary registration, he wants to be compliant with the Federal SORA law which requires wherever you own a property to register.

To require Mr. Epstein to register as a Level Three offender in New York would actually require him to come to New York more than he does normally, it would require him to come every 90 days and renew his registration.

He is very diligent in registering with New York authorities.

All of the other jurisdictions that have considered his case have determined that he either not register at all or register at the lowest level, and he has been more than compliant with all of those requirements.

Your Honor, we would join in the prosecutor's application.

THE COURT: I am sure you would.

MS. MUSUMECI: By way of background, we have been in contact with the prosecutor's office on this matter since I believe certainly since Mr. Epstein got his notification, which I believe was in August. We have met with the

prosecutor and provided numerous materials for the prosecutor to consider. We have included in that a deposition from the detective who headed this investigation who acknowledged in a sworn deposition that the lead prosecutor who originally had the case, whose name I cannot pronounce, Lanna Belohlavek, I apologize for the mispronunciation, said to the detective after her investigation, there are no real victims here.

All of the alleged conduct that is cited in the board's write up was commercial conduct. All of the alleged conduct the women went voluntarily, there are no allegations of force certainly none.

THE COURT: There was no allegation of force in the marine either, who met a girl in a bar, a young girl 17, there was no force there.

MS. MUSUMECI: It is our understanding that the prosecutor in Florida conducted a full investigation, as full as she was able with the cooperation afforded by these complainants, and determined that the only case that she could present to the grand jury was this indictment for a non registrable offense then --

THE COURT: But it is registrable here.

I don't know what you mean non registrable offense.

MS. MUSUMECI: Let me explain, Your Honor.

*Vikki J. Benkel*
*Senior Court Reporter*

1                Mr. Epstein plead to two charges, one was an
2    indictment which is an offense that is not registrable, it
3    is a Florida indictment for --
4                THE COURT: Then why does he have to register
5    here?
6                MS. MUSUMECI: It was a second offense that he
7    plead to --
8                THE COURT: That is registrable.
9                MS. MUSUMECI: That is registrable.
10               That offense was by information and that is the
11   only registrable offense, that is what the DA's office is
12   considering in doing their scoring.
13               The indictment which was the only case that the
14   prosecutor even prosecuted through grand jury is not even a
15   registrable offense.
16               THE COURT: He plead guilty to a registrable
17   offense.
18               MS. MUSUMECI: Yes.
19               THE COURT: What did he plead guilty to?
20               MS. GAFFNEY: He plead guilty to the procuring a
21   person under 18 for prostitution.
22               THE COURT: Procuring a person under 18 for
23   prostitution.
24               MS. GAFFNEY: Right.
25               THE COURT: How old was she?

1   MS. GAFFNEY: It appears the first time they met
2   she was either 16 or 17, then for the remainder of their
3   relationship she was probably 17.
4   THE COURT: How long was their relationship?
5   MS. GAFFNEY: She met, she gave him approximately
6   15 massages, including with sexual contact, and ultimately
7   when she is 17 had intercourse with him.
8   THE COURT: She is a child.
9   MS. MUSUMECI: Your Honor, I would note that under
10  SORA it is clear that prostitution offenses are only
11  registrable when in fact by clear and convincing evidence
12  the women or victim is 17, is under 17.
13  THE COURT: Well, she met him at 16, he procured
14  her at 16 from what I read.
15  MS. MUSUMECI: There is evidence we challenged.
16  THE COURT: He plead guilty to that, didn't he?
17  MS. MUSUMECI: He plead guilty to under 18, which
18  is the law in Florida, which is a different standard than
19  what the law is in New York. And there is no evidence,
20  there is no clear and convincing evidence as to her specific
21  age at the time of the specific conduct.
22  THE COURT: Well, the DA just told me she was most
23  likely 17, she just said it on the record.
24  MS. MUSUMECI: Your Honor, we agree that the
25  evidence is that she was 17 on the one occasion she had

consensual intercourse with him and 17 is not registrable or criminal under New York law.

And the prostitution aspect of having intercourse with a 17 year old is not registrable conduct.

THE COURT: Why does he have to register here?

MS. GAFFNEY: Because it is a register able offense in Florida, New York State board of examiners --

THE COURT: Recognizes it.

MS. GAFFNEY: Recognizes it, yes.

THE COURT: I have had many cases like that where it was not registrable here but it was in the state where the person came from and New York recognized that.

MS. MUSUMECI: Your Honor, we are not saying that he should not register. Mr. Epstein has already registered and recognizes his duty to register.

THE COURT: I am glad of that, very glad of that.

I am sorry he may have to come here every 90 days.

He can give up his New York home if he does not want to come every 90 days.

Anything else?

I rely on the board.

MS. MUSUMECI: Your Honor, we would reserve our right to appeal Your Honor's ruling.

THE COURT: Of course, do so.

MS. GAFFNEY: For the record, Your Honor, he is

SORA HEARING                                       page 13

going to be deemed a Level Three sex offender with no designation, correct?

THE COURT: Correct.

MS. MUSUMECI: For purposes of the appeal I believe that Your Honor --

THE COURT: Give me the board's scoring.

The board has scored use of violence the least, 10.

Sexual contact with victim, 25. I agree.

Number of victims, three or more. He only plead guilty to one, but apparently there were more than one and I think the People concede that although they say it was not reliable.

Duration of offense, conduct with victim, continuing course of sexual misconduct, the People have told me it was continuing for 20 points.

Age of victim 11 through 16, he got 20 points for that, and she was 16 at the time.

Other victim characteristics, there was no mental disable or helplessness. I agree.

Relationship with victim stranger, 20 points.

Age at first act of sexual misconduct, 20 or less. They scored him zero on that.

Number and nature of prior crimes, no history, they scored him five on that.

1    Recency of prior offense less than three years,
2 they gave him zero.
3    Drug or alcohol abuse history, they gave him zero.
4    Acceptance of responsibility, they gave him zero.
5    Conduct while confined, they gave him zero.
6    And supervision, they gave him zero.
7    Living employment situation, zero.
8    They gave him 130 points, which is the highest
9 level, and I agree with that.
10   MR. LEFKOWITZ: If I could be heard for one
11 moment.
12   It appears that the state board made its
13 determination based on access to a police report in Florida.
14   The prosecutor, the lead prosecutor, the lead sex
15 crimes prosecutor in Palm Beach made a determination that
16 the complainants and the police report itself was not
17 credible and decided not to prosecute on the basis of all of
18 that.
19   In addition, there has been through the course of
20 the last few years some civil litigation, as you might
21 imagine, involving these matters and we now have sworn
22 testimony in evidence from the complainants themselves
23 disclaiming much of what appears in the police report.
24   So, Your Honor, we would submit and this is not to
25 make light in any way of the conduct what Mr. Epstein did or

1  what Mr. Epstein plead guilty to, but with respect to
2  everything and that is why Mr. Epstein voluntarily
3  registered in New York even though there is a question about
4  whether he has any obligation just as a jurisdictional
5  matter, but Your Honor, with respect to the appropriate
6  level for him to register, we would submit Your Honor that
7  the evidence simply does not support the foundation of the
8  state's determination.
9       THE COURT: You have made a very clear record and
10 you have your right to appeal.
11      I feel the board looked into all of this, made
12 their recommendation, found him to have 130 points and I see
13 no reason to disturb that.
14      Thank you.
15
16      I, Vikki J. Benkel, a Senior Court Reporter in and for
17 the State of New York, do hereby certify that the foregoing
18 transcript is true and accurate to the best of my knowledge,
19 skill and ability.
20
21                    _____
22                    Vikki J. Benkel
23
24
25

*Vikki J. Benkel*
*Senior Court Reporter*



**SEX OFFENDER MANAGEMENT**
ASSESSMENT AND PLANNING INITIATIVE
*smart.gov/SOMAPI*

# SOMAPI Report Highlights
# Adult Sex Offender Recidivism

### Observed recidivism rates of sex offenders are underestimates of actual reoffending.
Sex crimes are one of the most underreported crimes and are often unseen by anyone other than the victim and perpetrator. Low reporting levels make it extremely difficult to estimate actual sexual recidivism rates. Additionally, only a small portion of sex offenses reported to law enforcement result in the offender's arrest. Therefore, it's generally recognized that observed recidivism rates are underestimates of the true reoffense rates of sex offenders.

### Sex offender recidivism is difficult to measure.
Recidivism rates are measured differently from one study to the next, with different results. Studies differ in how recidivism is defined (i.e., rearrest vs. reconviction), how long offenders are followed and what types of offenders are included (i.e., rapists vs. child molesters).

### Recidivism rates of sex offenders range from 5 percent after 3 years to 24 percent after 15 years.
Relatively low rates are reported in studies using observed sexual recidivism rates over follow-up periods shorter than 5 years. For example, a 2003 study (Langan, P., Schmitt, E., & Durose, M., "Recidivism of Sex Offenders Released From Prison in 1994," Bureau of Justice Statistics) found a sexual recidivism rate of about 5 percent using a 3-year follow-up period for a large sample of sex offenders released from prison. Studies employing longer follow-up periods consistently report higher rates of recidivism. For example, a 2004 study (Harris, A.J.R., & Hanson, R.K., "Sex Offender Recidivism: A Simple Question," Public Safety and Emergency Preparedness Canada) reported sexual recidivism rates of 20 percent and 24 percent for a sample of sex offenders based on a 10-year and 15-year follow-up period, respectively.

### Sex offenders — regardless of type — have higher rates of general recidivism than sexual recidivism.
Recidivism studies have consistently found that adult sex offenders have much higher rates of general reoffending than sexual reoffending. A 2004 study (Hanson, R.K., & Morton-Bourgon, K., "Predictors of Sexual Recidivism: An Updated Meta-Analysis," Public Safety and Emergency

*Measuring sex offender recidivism is difficult due to underreporting and different methods used in research studies. Studies with longer follow-up periods show that recidivism increases over time. Furthermore, different "types" of sex offenders have different recidivism rates.*

Preparedness Canada) analyzed findings from 95 studies and found that sex offenders had an average overall recidivism rate of 37 percent compared to an average sexual recidivism rate of 14 percent, based on follow-up periods of 5 to 6 years. This suggests that policies aimed at protecting the public from sex offender reoffense should be concerned with the likelihood of any form of serious recidivism, not just sexual recidivism.

### Female sex offenders reoffend at significantly lower rates than male offenders.
Five- to six-year rates of sexual recidivism for female sex offenders may be as low as 1 to 3 percent. The empirical evidence regarding the different recidivism rates of female and male sex offenders suggests that intervention and management practices need to differentiate between female and male sex offenders, and that methods for assessing risk of male sex offenders are unlikely to be accurate when applied to female sex offenders (Cortoni, F., Hanson, R.K., & Coache, M.È., "The recidivism rates of female sex offenders are low: A Meta-Analysis," Sexual Abuse: A Journal of Research and Treatment, 22; 2010).

### Different types of sex offenders have different recidivism rates.
Research examining the recidivism of rapists and child molesters indicates that the highest observed recidivism rates are found among child molesters who offend against boys. Comparatively lower recidivism rates are found for rapists, child molesters who victimize girls and incest offenders.

*The opinions, findings and conclusions or recommendations expressed in this summary are those of the authors and contributors and do not necessarily represent the official position or policies of the SMART Office or the U.S. Department of Justice. For more information about SOMAPI and this topic, visit www.smart.gov/SOMAPI.*

May 2017

Case 1:19-cr-00490-RMB Document 14 Filed 07/15/19 Page 18 of 18
SEALED DOCUMENT
*U.S. v. Jeffrey Epstein*, 19-cr-490 (RMB)

## ASSET SUMMARY - JUNE 30, 2019

| | Asset | | 6/30/19 Value |
|---|---|---|---:|
| | Cash | $ | 56,547,773 |
| * | Fixed Income | $ | 14,304,679 |
| * | Equities | $ | 112,679,138 |
| * | Hedge Funds & Private Equity | $ | 194,986,301 |
| ** | Properties | | |
| *** | 9 East 71st Street, New York, NY 10021 | $ | 55,931,000 |
| | 49 Zorro Ranch Road, Stanley New Mexico 87056 | $ | 17,246,208 |
| | 358 El Brillo Way, Palm Beach, FL 33480 | $ | 12,380,209 |
| | 22 Avenue Foch, Paris France 75116 | $ | 8,672,823 |
| | Great St James Island No. 6A USVI 00802 (parcels A,B,C) | $ | 22,498,600 |
| **** | Little St James Island No. 6B USVI 00802 (parcels A,B,C) | $ | 63,874,223 |
| | **Total Assets** | **$** | **559,120,954** |

\*   Values reflect gross numbers that are not net of tax

\*\*   All properties are valued at assessed values as per the most recent property tax bills

\*\*\*   Note the United States Attorney's office for the Southern District of New York has stated that the value of this home is $77,000,000 as compared to the market value shown above per the June 1, 2019 property tax bill

\*\*\*\*   Note this property is valued at cost basis, however the assessment on the most recent tax bill is $4,857,500