```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA

 4              v.                          19 CR 490 (RMB)

 5   JEFFREY EPSTEIN,
                                            Conference
 6                   Defendant.

 7   ------------------------------x
                                            New York, N.Y.
 8                                          July 8, 2019
                                            2:00 p.m.
 9   Before:

10              HON. RICHARD M. BERMAN

11                                          District Judge

12

13
              APPEARANCES
14

15   GEOFFREY S. BERMAN
          United States Attorney for the
16        Southern District of New York
     ALEXANDER ROSSMILLER
17   MAURENE R. COMEY
     ALISON G. MOE
18        Assistant United States Attorneys

19
     REID H. WEINGARTEN
20   MARTIN G. WEINBERG
     MARC FERNICH
21        Attorneys for Defendant

22
     Also Present:
23
          AMANDA YOUNG – Special Agent FBI
24        PAUL BYRNE – NYPD
          KEYANA POMPEY – Probation Officer
25        LEA HARMON – Probation Officer
```

1            (Case called)

2            THE COURT:  Good afternoon.

3            I think I'm pretty much up to speed as to where you
4    are in the sense that I am aware that you have been before
5    Magistrate Judge Pitman earlier this morning and up to some few
6    minutes ago for purposes of presentment, arraignment, and some
7    preliminary discussion of bail.  Is that accurate?

8            MR. ROSSMILLER:  That's correct, your Honor.  I don't
9    want to speak for defense counsel, but my understanding is they
10   expect to put in some sort of written submission and return to
11   argue the rest of the bail hearing on Thursday before Judge
12   Pitman at 2:00.  That is, if your Honor refers the bail hearing
13   to Judge Pitman on that basis as well.

14           THE COURT:  I might just take that bail application
15   before me.  We'll figure out a time when that would be
16   comfortable for all of you.  How is that?

17           MR. WEINGARTEN:  That's fine with the government, your
18   Honor.

19           THE COURT:  I have a few items on my list.  I want to
20   make mention, I'm sure Magistrate Judge Pitman did, of our
21   presumption of innocence.  Even though in some of these
22   discussions, and probably more so when we get to bail, it may
23   sound like we are talking about merits of the case, it's
24   important that we underscore that the presumption of innocence
25   pertains to Mr. Epstein, now and until such time, if it comes,

1  that there is a guilty determination by a jury or by the Court,
2  that he is presumed to be innocent.
3      I did have these questions. One has to do with
4  persons who are categorized as victims. I want to get some
5  assurance from the U.S. Attorney's office that they have been
6  notified about this case and that you will keep them abreast of
7  developments in this case.
8      MR. ROSSMILLER: Yes, your Honor, we are acutely aware
9  of our obligations to the victims in this case. We have
10 notified them and we expect to continue to do so as the case
11 moves forward.
12     THE COURT: Second, for my background, I am aware that
13 there are certain conditions that attach to Mr. Epstein's sex
14 offender status resulting from his Florida state prosecution in
15 or about 2008. One result is that under New York law --
16 correct me if I'm wrong about any of this -- he is considered
17 to be at high risk of committing another sex crime with minors.
18 Is that a fair characterization of his sex offender status?
19     MR. ROSSMILLER: Your Honor, as the government set
20 forth in its submission to Judge Pitman, and we copied this
21 Court, it is our understanding that the defendant is a tier 3
22 sex offender in New York and that that is characterized as
23 high-risk individual.
24     THE COURT: The question that I have is what are the
25 implications, if any, of the search conducted by the U.S.

Attorney's office over the weekend of Mr. Epstein's residence on East 71st Street for the terms and conditions of his sex offender status, if any? Are there any consequences or relationship between what was uncovered and what he is obliged to do?

MR. ROSSMILLER: May I have one moment, your Honor?

THE COURT: Yes.

MR. ROSSMILLER: Your Honor, in response to that question, at the outset I should say that we don't have particular interaction with state authorities with respect to those types of notifications. We are, I would say, in the early stages of reviewing those materials. With respect to the defendant's obligations or potential consequences in the New York State system, we certainly will notify whichever authorities are appropriate. I don't think that we have a role other than that.

I will say that they are extremely concerning with respect to bail here, with respect to the conduct here, and I expect we will get into that more in our submissions and bail argument.

THE COURT: By the way, if defense counsel wants to jump in at any point, feel free to do that?

MR. WEINGARTEN: On that, we have not seen the pictures.

THE COURT: I haven't either.

1                MR. WEINGARTEN:  I understand.  It is our expectation
2  that they are ancient, that they are pre his spending time in
3  prison, and/or they are erotic pictures of adults who
4  voluntarily engaged in that conduct.
5                THE COURT:  I have a question about the Southern
6  District of Florida nonprosecution agreement dated probably in
7  2008 -- is that correct?
8                MR. ROSSMILLER:  It's dated in 2007, your Honor.
9                THE COURT:  Is that a public document?
10               MR. WEINGARTEN:  It is, your Honor.  It's been
11 publicly filed in connection with other civil litigation.
12               THE COURT:  Does that agreement bear on in any way the
13 search and results of the search that were conducted at Mr.
14 Epstein's townhouse over the weekend?
15               MR. ROSSMILLER:  Not in ways that I am aware of now,
16 your Honor.  Again, we are very much in progress on the search.
17 We will continue to consider any other implications beyond this
18 case as we continue to review those materials.
19               On a separate note, your Honor, I want to add the
20 government noted it is aware of its victim obligations.  In
21 terms of notification, we have made notification to individuals
22 that we are in particular aware of.  We also have listed a
23 phone number for victims to be in touch with the FBI, with the
24 U.S. Attorney's office.  We have also put a website up and have
25 asked victims to be in touch with us through those sources as

1  well. That is just to round out the notification that the U.S.
2  Attorney's office has made.
3     MR. WEINGARTEN: May I be heard briefly on that?
4     THE COURT: Sure.
5     MR. WEINGARTEN: For us, your Honor, the NPA is the
6  center of the universe for everything, search included, because
7  the NPA was the result of an extensive 3-year investigation by
8  law enforcement in Florida. In essence, the Feds made Mr.
9  Epstein plead to a state offense and they declined prosecution
10 federally, and that is translated in the NPA. Mr. Epstein did
11 his time, Mr. Epstein is on the registration list, and Mr.
12 Epstein paid the alleged victims.
13     As I am sure you have noted from the indictment, that
14 conduct too is an ancient history. That conduct is 2002 to
15 2005. It is our belief that this is basically a re-do. This
16 is basically the Feds today, not happy with what happened in
17 the decision that led to the NPA, redoing the same conduct that
18 was investigated 10 years ago and calling it, instead of
19 prostitution, calling it sex trafficking. We think that is the
20 heart of everything, and that will be the centerpiece of our
21 defense, at least legally.
22     THE COURT: My understanding of what the government is
23 asserting is that the episodes that occurred in Manhattan were
24 not included in the nonprosecution agreement in Florida and
25 that there is a separate basis not only for a sex trafficking

1    count but also for a sex trafficking conspiracy count.
2              MR. WEINGARTEN:  We have had good conversations with
3    the prosecutors, and we like and respect them.  We are looking
4    forward to getting discovery.  We are interested to see whether
5    the prosecutors in Florida, who are now under severe criticism
6    10 years later, steered the alleged victims to New York,
7    whether or not they violated their responsibilities under the
8    NPA.
9              THE COURT:  Whether the federal prosecutors in Florida
10   violated their terms and conditions?
11             MR. WEINGARTEN:  That will certainly be germane.
12             THE COURT:  Is that the point?
13             MR. WEINGARTEN:  Yes.
14             THE COURT:  Got it.
15             MR. ROSSMILLER:  Your Honor, if I could very briefly
16   respond to those points?
17             THE COURT:  Sure.
18             MR. ROSSMILLER:  I expect this will be briefed and
19   argued on Thursday.  I don't intend to go into extensive
20   details about that.  I just want to flag for the Court that
21   defense counsel is saying that this conduct is ancient.  What
22   he is not saying is it is beyond the statute of limitations,
23   because it is not.
24             Second, the allegation that this is some kind of a
25   conspiracy within the Department of Justice is just false.

1  There is no evidence to support that.  The investigation was
2  begun and conducted entirely separate from any other district.
3  It began in the Southern District of New York.
4             Certainly there is evidence that was gathered that is
5  consistent with and even overlapping with the prior
6  investigation.  But as the Court noted, in particular an entire
7  count of this indictment is with respect to New York victims.
8  And that is before we even get to the fact that the
9  nonprosecution agreement does not bind the Southern District of
10 New York.
11            THE COURT:  I was going to ask you about that too.
12 Now that you have mentioned the topic, explain that, would you.
13            MR. ROSSMILLER:  Yes, your Honor.  I do expect that we
14 can brief this, but the short version is that this prosecution
15 is not precluded by the nonprosecution agreement entered into
16 by the defendant in the Southern District of Florida.  That
17 agreement expressly referred to that federal district.  It
18 didn't purport to bind any other office or district.
19            It is well-settled in the Second Circuit that a plea
20 agreement in one U.S. Attorney's office does not bind another
21 unless otherwise stated.  That is even if, based on case law,
22 the agreement refers generally to "the government."  Again,
23 additionally, as set forth in the indictment returned by the
24 grand jury, the substantive count alleges acts occurring in New
25 York and alleges New York-based victims.

1    That is in spite of the fact that the Southern
2 District is not bound, is not a signatory to, and otherwise has
3 no connection to the NPA. And there is no evidence that we
4 have come across that the Southern District of New York was
5 consulted, asked, involved, notified as far as we have seen.
6    For those reasons and others I'm sure we will brief,
7 we don't think the NPA applies to us.
8    MR. WEINBERG: If I may reply briefly, your Honor?
9    THE COURT: Yes.
10    MR. WEINBERG: I have been one of Mr. Epstein's
11 counsel through the CVRA litigation which started in 2008 and
12 continues. In fact, our briefing is today. The NPA provided
13 him with immunity for any offenses arising from a joint
14 FBI/grand jury/U.S. Attorney investigation that led to a
15 decision by Mr. Epstein to plead to a higher state offense than
16 the state prosecutors contemplated. He went to jail, signed an
17 agreement, and has lived up to its terms 100 percent.
18    We have seen in the paperwork of the CVRA, in the
19 Southern District of Florida, in writing at docket 205-2 the
20 government's motion to dismiss CVRA, urging that the witnesses
21 there go to the Southern District of New York and essentially
22 try to motivate them to prosecute for the very same conduct, in
23 other words, the conduct that Mr. Epstein was immunized,
24 including travel between two states, telephonic communications
25 between two states. Florida immunized him for the same travel

and telephonic communications as well as the 1591 category.

In addition, the Department of Justice reviewed the NPA on several occasions in 2008 and essentially confirmed that the exercise of discretion shown in Florida was appropriate. But the most important thing is that there was communication between the prosecutors in Florida, perhaps through prosecutors in Georgia that took over the case because the Florida prosecutors were recused as a result of Judge Marrah's decisions in the CVRA case.

We know the government is relying in part on evidence that was generated by the Southern District of Florida case back in 2007. They have talked about message pads, telephone records. They are the same message pads and telephone records that reflect conduct that was exclusively 15, 16, 17 years ago. So we do have a principal position that we will put to the Court at the appropriate time regarding the legality of this prosecution and whether or not it is appropriately barred.

I can say as a criminal defense lawyer of 45 years, when there is an interstate wire, mailing, travel, and there is one district that is conducting an investigation, you negotiate with that district and count on the Department of Justice to what it does every day decade after decade after decade, which is not to go to the second jurisdiction that received the mail that was sent from the immunizing jurisdiction and have a prosecution on the very same conduct. We will be briefing

that.

THE COURT: Do you anticipate that there is going to be any discussion here about the legality of the NPA?

MR. WEINBERG: Not the legality of the NPA. I think the discussion here is going to be about its scope.

THE COURT: From the defense, yes. You don't think you expect to hear anything from the government, for example?

MR. WEINBERG: In the Southern District case, the CVRA case, maybe two weeks ago the Northern District of Georgia prosecutors, who are proxy for the Southern District of Florida, filed the submission before District Judge Marrah in the CVRA case totally supporting the constitutionality and legality of the NPA, their discretion to enter into it, and that there absolutely has never been a charge that Mr. Epstein ever did anything other than fully perform his end as a citizen who is expecting the benefits of a contract that he lived up to.

THE COURT: I thought there had been some contention that the way that the victims vis-a-vis the Florida NPA were dealt with or not dealt with was one basis for attacking the legality of that arrangement.

MR. WEINBERG: The petitioners are vigorously and have vigorously for many years challenged, many years starting quite frankly after Mr. Epstein performed his obligations to go to jail and challenged it, claiming that there was no consultation

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1     prior to the government's entering the agreement.

2              The Department of Justice at the time did not believe

3     the CVRA extended absent a federal charge.  The predicate is a

4     federal crime that harms a victim.  The petitioners have

5     vigorously asserted a different position.  Judge Marrah, in a

6     summary judgment motion, agreed with the petitioners as to the

7     fault of the government in not conferring.  The issue of remedy

8     is before Judge Marrah at the present time, your Honor.

9              THE COURT:  Okay.

10             MR. ROSSMILLER:  Your Honor, if I may very briefly?

11             THE COURT:  Yes.

12             MR. ROSSMILLER:  The crux of the defense argument here

13    I think cuts precisely the other way.  They are arguing that

14    the Southern District of Florida has sort of sent up a flag

15    that these prosecutions could be undertaken elsewhere.  That's

16    true.  The Southern District of Florida has argued in papers

17    that they believed, the Southern District of Florida believed,

18    that the nonprosecution agreement was limited to that district.

19    They have said that out loud and in public and in their

20    positions in filing.

21             So certainly this investigation was not shoveled to

22    the Southern District of New York from anywhere else, including

23    the Department of Justice.  We expect that the nonprosecution

24    agreement will not be an impediment, in particular because the

25    defendant certainly did not lack for sophisticated counsel in

1   negotiating that agreement, which again did not include the
2   Southern District of New York.  We don't expect that to be any
3   impediment at all here.
4            THE COURT:  Got it.
5            This is a small item.  In the pretrial services report
6   which was prepared today -- how many, if more than one,
7   passports does Mr. Epstein have?
8            MR. WEINGARTEN:  Mr. Epstein reported today one.  Two
9   others were rescinded.  As we understand it, there is one
10  effective passport today.
11           I would like to make one other point about the
12  pretrial that is extremely important.
13           THE COURT:  Go ahead.
14           MR. WEINGARTEN:  The way it reads is that we have
15  refused to provide information about income and assets.
16           THE COURT:  I didn't really read it that way myself.
17  I thought it was incomplete in some places and I thought it
18  could be beefed up, so to speak.  But I imagine that in the
19  bail application those matters may be dealt with.
20           MR. WEINGARTEN:  Exactly.
21           THE COURT: For Mr. Rossmiller:  In your letter you
22  describe some obstruction or harassment, witness tampering,
23  alleged, by Mr. Epstein.  That, I take it, is going to be
24  included in any response or any bail submission made by the
25  government?

MR. ROSSMILLER: Your Honor, I think we addressed that in our initial submission. To the extent defense counsel has a response to it, we will evaluate that response and see whether additional submission from the government is required or appropriate.

THE COURT: I think that's it for me in terms of questions that I might have had.

There is, of course, a conspiracy charge here, one of the two counts. It may be early in your investigation to know. Do you anticipate that there may be other defendants in this proceeding?

MR. ROSSMILLER: Your Honor, we don't expect any imminent superseding indictments in this case. It certainly is possible down the road.

MR. WEINGARTEN: May I make one point, your Honor? These obstruction allegations we find very nettlesome and bothering. My understanding is that the Feds and Mr. Epstein's attorneys back in the early 2000s, or 2007 and 8, when they were negotiating were looking desperately for an appropriate statute. They finally settled on a state statute that Mr. Epstein pled to. We all know how unusual that is. There was some consideration of a federal statute, including obstruction.

So lawyers in good faith were having discussions back and forth whether or not they could squeeze Mr. Epstein's conduct into a particular statute, and they concluded they

1  couldn't because the facts didn't fit.  That is my

2  understanding of how those obstruction discussions arose.

3              THE COURT:  Got it.

4              In terms of bail application, it would be helpful, and

5  maybe this is your anticipation, to file written submissions.

6  If you could do that.  What I'm getting to is Thursday

7  afternoon is not a good time, in my opinion.  I would prefer to

8  do it, if you would go along with this, Monday morning at, say,

9  9:30.  That would give everybody more time to make these

10 submissions and to study them.  Is that agreeable?

11             MR. WEINGARTEN:  Yes.

12             MR. WEINBERG:  Yes.

13             THE COURT:  Why don't we say Monday at 10:00.  Have

14 you arranged written submissions on any time schedule with

15 Magistrate Judge Pitman?

16             MR. ROSSMILLER:  May we have just a moment, your

17 Honor, with defense counsel?

18             THE COURT:  Yes, would you.  And also determine if one

19 party or the other is going first and that the other is

20 responding or they are simultaneous.

21             MR. ROSSMILLER:  Yes, your Honor.  Thank you.

22             (Pause)

23             MR. ROSSMILLER:  Your Honor, the government is

24 prepared to rely on its initial submission at least for its

25 first argument.  I expect defense counsel will respond to that

1    and propose a package.  Then the government would like an

2    opportunity to reply to that submission.

3            The parties would be happy to make those deadlines

4    Thursday and Saturday respectively.  However, we are also happy

5    to back that up a little bit if the Court prefers not to

6    receive the government's submission over the weekend.  We could

7    do an earlier deadline on Thursday for defense and a late

8    Friday deadline for the Court from the government, depending on

9    what the Court prefers.

10           THE COURT:  I was going to propose defense Thursday at

11   noon.  Is that okay to get your submission in?

12           MR. WEINBERG:  We can do that, your Honor.

13           THE COURT:  Thanks.

14           And if you could respond Friday by 5:00 p.m.

15           MR. ROSSMILLER:  We will, your Honor.  Thank you.

16           THE COURT:  Then we can have oral presentations.  I

17   take it everybody wants to have oral presentations in addition

18   to the written.  I'll set aside as much time as we need on the

19   15th at 10:00.

20           I ask the government if there is a speedy trial issue

21   or application that takes us to Monday at 10:00 a.m.

22           MR. ROSSMILLER:  Yes, your Honor.  The government asks

23   that speedy trial time be excluded until Monday.  We do expect

24   to begin the process of working on producing discovery, to

25   include discussions with defense counsel about a protective

1   order.  I think, frankly, the outcome of that will be effected

2   by the coming week.  But we do expect to have those

3   conversations and therefore request that speedy trial time be

4   excluded until Monday.

5              THE COURT:  I am going to find under 18 United States

6   Code 3161 that the request for adjournment, joined in by both

7   sides, to and including Monday the 15th at 10:00 a.m., is

8   appropriate and warrants exclusion of the adjourned time from

9   speedy trial calculations.

10             I further find that the exclusion is designed to

11  prevent any possible miscarriage of justice to facilitate these

12  proceedings and, initially at least, so that counsel has time

13  to prepare written bail submission and to guarantee effective

14  representation of and preparation by counsel for both sides.

15  Thus, the need for exclusion and the ends of justice outweigh

16  the interests of the public and the defendant in a speedy trial

17  pursuant to 18 U.S.C. section 3161(h)(7)(A) and (B).

18             Does anybody want to add anything to today's session?

19             MR. ROSSMILLER:  Your Honor.  May we have one more

20  moment with defense counsel?

21             THE COURT:  Sure.

22             (Pause)

23             MR. ROSSMILLER:  Nothing from the government.  Your

24  Honor.

25             THE COURT:  Defense?

1     MR. WEINBERG:  Nothing from the defense, your Honor.
2     THE COURT:  Nice to see you all.  See you on Monday.
3  Thank you.
4             (Adjourned)