j782epsC kjc

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
     UNITED STATES OF AMERICA,            New York, N.Y.
 3
              v.                          19 Cr. 490(RMB)
 4
     JEFFREY EPSTEIN,
 5
                    Defendant.
 6   ------------------------------x      Conference

 7                                        July 8, 2019
                                          1:20 p.m.
 8

 9   Before:

10                      HON. HENRY B. PITMAN,

11                                        Magistrate Judge

12

13                         APPEARANCES

14   GEOFFREY S. BERMAN
          United States Attorney for the
15        Southern District of New York
     BY:  ALEXANDER ROSSMILLER
16        ALISON J. MOE
          MAURENE R. COMEY
17        Assistant United States Attorneys

18   STEPTOE & JOHNSON, LLP
          Attorneys for Defendant
19   BY:  REID H. WEINGARTEN

20   MARTIN G. WEINBERG
          Attorney for Defendant
21
     MARC FERNICH
22        Attorney for Defendant

23
     Also Present:
24
     Special Agent Amanda Young, FBI
25   Detective Paul Byrne, NYPD
```

j782epsC kjc

1          (Case called)

2          THE DEPUTY CLERK:  Counsel, please state your name for

3    the record.

4          MR. ROSSMILLER:  Good afternoon, your Honor.  For the

5    government, Alex Rossmiller, Alison Moe, and Maurene Comey.

6    With us are Special Agent Amanda Young of the F.B.I. and

7    Detective Paul Byrne, NYPD task force officer.

8          THE COURT:  Okay.

9          MR. WEINGARTEN:  Good afternoon, your Honor.  For

10   Jeffrey Epstein, Reid Weingarten from the law firm of Steptoe &

11   Johnson.

12         MR. WEINBERG:  Good afternoon, your Honor.  Martin

13   Weinberg.  I'm an attorney from Boston, Massachusetts; and,

14   with your Honor's permission, I will be filing a *pro hac vice*

15   to represent Mr. Epstein.

16         THE COURT:  Okay.

17         MR. FERNICH:  Good afternoon, your Honor.  Marc

18   Fernich, New York, New York, also for Mr. Epstein.

19         THE COURT:  All right.  I have spoken to Judge Berman.

20   The matter has been referred to me for the initial appearance,

21   arraignment, and bail.

22         Mr. Epstein, my name is Magistrate Judge Pitman.  The

23   purpose of this proceeding is to inform you of certain rights

24   that you have, to inform you of the charges against you, to

25   consider whether counsel should be appointed for you, and to

j782epsC kjc

1    decide under what conditions, if any, you should be released.

2              Can I have the date and time of arrest, please?

3              MR. ROSSMILLER:  Yes, your Honor.  The defendant was

4    arrested on Saturday, July 6, at approximately 5:30 p.m.

5              THE COURT:  Thank you.

6              Mr. Epstein, you have the right to remain silent.  You

7    are not required to make any statements.  Even if you have made

8    any statements to the authorities, you need not make any

9    further statements.  Anything you do say can be used against

10   you.

11             You have the right to be released, either

12   conditionally or unconditionally, pending trial unless I find

13   that there are no conditions or combination of conditions that

14   would reasonably assure your presence in court and the safety

15   of the community.

16             You have the right to be represented by counsel during

17   all court proceedings, including this one, and during all

18   questioning by the authorities.  If you cannot afford an

19   attorney, I will appoint one to represent you.

20             It is my understanding that you are being represented

21   by retained counsel.  I want to advise you that the right to

22   the appointment of counsel is an ongoing right that you possess

23   throughout these proceedings.  If at any time you are unable to

24   continue with retained counsel for financial reasons, you can

25   apply to the court at any time for the appointment of counsel.

j782epsC kjc

1          Do you understand that?

2          THE DEFENDANT:  Yes, your Honor.

3          THE COURT:  Mr. Epstein, you are charged in an

4     indictment in two counts.

5          Count One charges you with a sex trafficking

6     conspiracy in violation of Title 18 United States Code § 371.

7          Count Two charges with you with the substantive

8     offense of sex trafficking in violation of Title 18 United

9     States Code § 1591.

10          Mr. Weingarten, are you going to be lead counsel here

11    today?

12          MR. WEINGARTEN:  Yes, your Honor.

13          THE COURT:  Mr. Weingarten, have you received a copy

14    of the indictment?

15          MR. WEINGARTEN:  Yes, your Honor.

16          THE COURT:  Have you reviewed it with your client?

17          MR. WEINGARTEN:  Yes, your Honor.

18          THE COURT:  Do you waive its reading?

19          MR. WEINGARTEN:  Yes, your Honor.

20          THE COURT:  Mr. Epstein, how do you plead?

21          THE DEFENDANT:  Not guilty, your Honor.

22          THE COURT:  Because the defendant has been indicted,

23    there will be no preliminary hearing, and that takes us to the

24    question of bail.  In that regard, I have received the Pretrial

25    Services report.  I have also received a letter from the

j782epsC kjc

1    government dated July 8, 2019.

2              I take it all counsel have the same documents?

3              MR. WEINGARTEN:  Yes, your Honor.

4              THE COURT:  I will hear from the government first, and

5    then I will hear from defense counsel.

6              MR. ROSSMILLER:  Yes, your Honor.

7              The government intends to seek detention, and I am

8    happy to explain the reasons why.  Would the court prefer that

9    I speak from the table or from the podium?

10             THE COURT:  Whatever your pleasure is.

11             MR. ROSSMILLER:  Your Honor, the defendant poses an

12   extraordinary risk of flight and danger presented by him.

13   Given the charges and the characteristics of the defendant, he

14   simply cannot reasonably be expected to appear in court if he

15   is granted bail.  Accordingly, the government joins the

16   recommendation of Pretrial Services that the defendant be

17   detained pending trial for a number of reasons.

18             Starting with the conduct alleged, the defendant is

19   charged with trafficking minors for sex acts, as the court

20   explained, in violation of 18 United States Code § 591, and is

21   charged with a count of conspiracy to traffic minors for sex

22   acts in violation of 18 U.S.C. 371.

23             In particular, the indictment charges that the

24   defendant engaged in a years-long scheme to sexually abuse

25   underage girls, paying minor girls to themselves be abused, and

j782epsC kjc

also paying certain victims to recruit other girls to be

subject to the defendant's sexual abuse.

　　　　The indictment alleges that the defendant undertook

this conduct at at least two locations, including his mansion

in Manhattan and his estate in Palm Beach, Florida.  In both

locations, victims were initially recruited to provide massages

to the defendant, which would be performed nude or partially

nude, would become increasingly sexual in nature, and would

typically include one or more sex acts, including contact with

the victims' genitals.  These victims, who were often

particularly vulnerable, were as young as 14, and the defendant

knew he was abusing underage girls.  The indictment further

alleges that the defendant perpetrated these crimes by working

with others, including employees and associates who facilitated

these abusive encounters.

　　　　Regarding the defendant himself, your Honor, he is

extraordinarily wealthy, mobile, and unattached to the Southern

District of New York.  He maintains at least six residences in

the United States and abroad, including the ownership of a

private island in the U.S. Virgin Islands and a residence in

Paris, France.  Among other things, the defendant owns two

private jets and routinely uses them to travel abroad.  He is a

man of nearly infinite means, your Honor; and, as set forth in

our submission, he has tremendous incentives to use those means

to flee prosecution.

j782epsC kjc

1          The government notes as an initial matter that this is

2    a presumption case because sex trafficking is charged; and,

3    moreover, each of the four factors to be considered in the

4    detention analysis strongly militates towards pretrial

5    detention.

6          So starting with the nature and seriousness of the

7    offense, as previously discussed, the nature and circumstances

8    of the crime are the most serious crime that this court sees.

9    The defendant is alleged to have spent years sexually abusing

10   minors in multiple locations and with dozens of victims.

11         The seriousness of the charge is also reflected in the

12   potential penalties, which include up to 45 combined years of

13   incarceration on Counts One and Two, and the likelihood of a

14   substantial period of incarceration is supported by the fact

15   that the government's evidence is strong.  There are multiple

16   individual identified victims in the indictment, numerous

17   specified overt acts, and dozens of overall victims alleged.

18         In order to protect the privacy of the victims, your

19   Honor, I'm not going to go into detail about particular

20   victims, but we can say that information provided by victims

21   has been detailed, it has been credible, and it has been

22   corroborated by other witnesses and contemporaneous documents

23   and records, including from a recent search of the defendant's

24   Manhattan mansion, as I will discuss further in a moment.

25         Separately, your Honor, in just the last 36 hours,

j782epsC kjc

1    that is, post charge, we have been contacted by multiple

2    attorneys and several additional individuals who have

3    identified themselves as victims and are interested in speaking

4    with the government, none of whom the government has previously

5    spoken with.

6              Your Honor, the defendant is 66 years old.  He is

7    charged with appalling crimes, and those charges are supported

8    by significant evidence, including victim and witness testimony

9    and damning record evidence.  He faces the very real prospect

10   of spending the rest of his life in prison.  He has every

11   motivation in the world to flee, and he has the means to do it.

12             And I will note for the court that this is a case

13   where the government has really put its money where its mouth

14   is on the risk of flight.  This district took extraordinary

15   efforts to maintain the covert status of its investigation for

16   many months due to the risk of flight of the defendant -- not a

17   single media report, not a single public statement, no appeals

18   for victims to come forward because of precisely the flight

19   risks we are discussing now.

20             Turning to the characteristics of the defendant, your

21   Honor, some individuals who face significant charges lack the

22   means to flee.  Not this defendant.  As set forth in the

23   government's submission, in the defendant's most recent sex

24   offender registration, he lists six residences worth tens or

25   hundreds of millions of dollars, including a residence abroad.

j782epsC kjc

1          The defendant has refused to answer any questions

2    about his income or assets for the Pretrial Services report, so

3    the scope of his wealth and his assets remains entirely

4    concealed to the government and to the court.  But the

5    defendant certainly has access to endless means to flee,

6    including two private jets.  He has no meaningful family ties,

7    and any argument that his properties would keep him in the

8    United States ignores his ability to simply leave those

9    properties behind in favor of moving beyond the reach of U.S.

10   authorities to live off his extensive wealth abroad, extensive

11   wealth, I should add, that the court doesn't even have any

12   accounting of.  He travels abroad extensively, has a residence

13   in France, and all of those factors further contribute to the

14   risk of flight.

15          With respect to danger and obstruction, again, this is

16   a presumption case, and not only is the defendant charged with

17   the sexual abuse of minors, he has previously pled guilty to

18   solicitation of an underage girl.  This court knows that

19   defendants are routinely detained in this district when facing

20   such charges and that this is not an unusual position for the

21   government to take.

22          It is further concerning that there are credible

23   allegations from the prior investigation that the defendant or

24   his agents engaged in witness tampering and harassment, and in

25   fact there is evidence that he was contemplating pleading

j782epsC kjc

1    guilty to that kind of offense in Florida.  Those allegations

2    include verbal harassment, evasion of legal process, and

3    forcing off the road the father of an individual relevant to

4    that investigation.

5            THE COURT:  Can you elaborate on that last point about

6    forcing somebody off the road?

7            MR. ROSSMILLER:  Your Honor, what we have is the

8    record evidence from an underlying civil dispute in Florida

9    that discusses this incident and discusses it in the context of

10   a potential plea of the defendant to obstruction or harassment

11   charges.  The government sets before this court that if the

12   defendant was willing to undertake such measure simply as a

13   result of an investigation, the potential for dangerous and

14   obstructive activity in an indicted case is alarming and very

15   real.

16           Despite having been previously convicted of a sex

17   offense involving an underage victim and being a registered sex

18   offender, the defendant has continued to maintain a vast trove

19   of lewd photography of young-looking women or girls at his

20   mansion.  Your Honor, pursuant to judicially authorized

21   warrants, law enforcement agents searched his home on Saturday

22   and found at least hundreds, and perhaps thousands, of sexually

23   suggestive photographs of nude females, many of whom appear to

24   be underage.

25           I also want to note that the search revealed specific

j782epsC kjc

1    evidence from his home consistent with victim accounts.  Even

2    the room where the abuse occurred, your Honor, the massage

3    room, was still set up in the same way it was 15 years ago,

4    with a massage table and sex paraphernalia.

5              And with respect to the photographs --

6              THE COURT:  When you say the evidence was consistent

7    with victim accounts, is it limited to the massage table and

8    massage room or is there something else?

9              MR. ROSSMILLER:  Descriptions of the massage room and

10   the massage table, that's correct, your Honor.

11             THE COURT:  Okay.  All right.

12             MR. ROSSMILLER:  With respect to the photographs, your

13   Honor, some of those were found in a locked safe which also

14   held electronic disks with labels that included the words

15   "Young Miscellaneous Nudes 1" and "Girl Pics Nude."

16             Your Honor, this is not an individual who has left his

17   past behind.  He is a continuing danger to the community and an

18   extraordinary risk of flight and, for those reasons, the

19   government joins the pretrial recommendation that the defendant

20   be detained pending trial.

21             THE COURT:  All right.  Thank you.

22             Mr. Weingarten.

23             MR. WEINGARTEN:  Thank you, your Honor.  I will use

24   the podium, if that's okay.

25             THE COURT:  That's fine.

j782epsC kjc

1          MR. WEINGARTEN:  So your Honor, I would like to start

2     by providing some context, and then I'm going to make a

3     suggestion as to how we proceed.

4          The beginning here is 2005 in Florida.  That's when an

5     allegation was received by the local police that Mr. Epstein

6     was engaged in sexual conduct for money, prostitution.

7     Thereafter, there was a very sophisticated three-year

8     investigation by law enforcement, including locals and feds,

9     into Mr. Epstein's conduct.  Numerous girls were interviewed,

10    employees were interviewed, and it is fair to say that a

11    significant segment of the law enforcement community in Florida

12    thought what we had in hand was simple prostitution.  There was

13    no coercion.  There were no threats.  There was no violence.

14    And it is also fair to say that a significant portion of the

15    law enforcement community in Florida believed that a local

16    misdemeanor was the appropriate sanction.

17          Now, it is also --

18          THE COURT:  Did you represent Mr. Epstein in the

19    Florida investigation?

20          MR. WEINGARTEN:  No, but I'm familiar with the

21    records.

22          THE COURT:  All right.

23          MR. WEINGARTEN:  It is also true that there was a

24    contrary view largely taken by the feds, and what ensued was a

25    complex set of discussions and negotiations and finally an

j782epsC kjc

agreement, an agreement that was consummated and agreed to all

the way up to main justice at a very, very high level.

          The agreement involved a plea in state court to

soliciting an underaged girl, which would require registration,

compensation paid to alleged victims, and an NPA from the feds,

in other words, a declination by the federal government, an

agreement that was approved all the way up in main justice and

it sure seemed like a global solution at the time to everyone

involved, including my client.

          What happened since then?  Mr. Epstein continued a

life of success, generosity, creativity and, more important, a

law-abiding life from 2008 forward.  How do we know?  Because

when you are in registration the way he is, every single night

his whereabouts are known.  There is constant reporting,

constant monitoring, and absolutely, to our knowledge, no

complaints by anybody from that moment forward about his

conduct until we have arrived in court here.

          Now, what has happened in court from that moment?

There have been lawsuits, many of them ludicrous, dismissed out

of hand.  But when something like this happens, a lot of stuff

comes out of the woodwork, and there were lawsuits that

Mr. Epstein settled also in the normal course.

          There was one particular litigation that leads to this

occasion, and that is, under the Crime Victims Rights Act, that

act simply says that victims have a right to be consulted by

j782epsC kjc

1    the United States, and there are alleged victims in this case

2    who complain that they were not, and there has been extensive

3    litigation in the Southern District of Florida before

4    Judge Marra on that very subject.  In fact, the judge concluded

5    that the prosecutors from the Southern District of Florida did

6    not adequately notify some of the victims about the ongoing

7    discussions and the consummation of the deal and, in

8    particular, the NPA.  The United States took the position that

9    they had no responsibility to do so, that they had treated the

10   victims properly, and that matter continues to this day.

11        The consequences of that matter are overwhelming,

12   because the judge suggested, I think three times, that the NPA,

13   the declination, could be voided.  And we think about that for

14   a second.  So a defendant negotiates what he thinks is a global

15   solution with the feds.  He does his time --

16        THE COURT:  Does the nonprosecution agreement in

17   Florida -- the nonprosecution agreements in the Southern

18   District routinely say they are limited to the Southern

19   District of New York.

20        MR. WEINGARTEN:  Obviously --

21        THE COURT:  Is there a similar provision in the

22   Florida agreement?

23        MR. WEINGARTEN:  I don't want to misstate.  It is not

24   before me.  It is obviously going to be an important part of

25   the pretrial motions.  What is for sure is that there was --

j782epsC kjc

1    the negotiation with the Southern District included

2    negotiations with main justice.  What's also true is the

3    investigation extended into the Southern District of New York

4    and elsewhere in terms of girls being interviewed.

5              So obviously your question is relevant and will be

6    part of the pretrial litigation for sure.  But what matters

7    here and for now is there certainly was a belief that there was

8    a global solution based upon the facts on the ground.

9              THE COURT:  Have you seen the Florida nonprosecution

10   agreement?

11             MR. WEINGARTEN:  Yes.

12             THE COURT:  And --

13             MR. WEINGARTEN:  I don't have it before me.  I don't

14   want to make a specific representation and not be completely

15   accurate.

16             THE COURT:  Okay.  All right.  Go ahead.

17             MR. WEINGARTEN:  The consequences of this are huge in

18   that if in fact there is a negotiation with a defendant, the

19   defendant does his time, the defendant pays his victim, and the

20   defendant spends ten years on the registration list and

21   prosecutors don't adequately notify the victims, how in the

22   world can that deal be undone?  Every prosecutor in the world

23   has to oppose that possibility.  No defense attorney in their

24   right mind would negotiate a deal with that potential

25   consequence.

j782epsC kjc

1          So this is a huge problem for the department and what

2     solution ensues, and I suggest the solution that ensued is this

3     indictment.  To us, this indictment is essentially a do-over.

4     The allegations are from 2002 to 2005.  This is old stuff.

5     This is ancient stuff.  This is the very stuff that was

6     investigated by the feds in Florida, a sophisticated three-year

7     investigation.  Two of the alleged victims in this indictment

8     are from Florida.  The indictment here tracks the conduct that

9     was investigated in Florida back before the agreement was

10    reached.  Obviously we need to get discovery to find out just

11    how inextricably linked the investigation back in Florida is

12    with what's going on here.  We do know we are talking about

13    ancient conduct.  We do know we are talking about facts that

14    are from 2002 to 2005, facts that were known to the United

15    States prosecutors before they entered into the NPA, the

16    declination.  This is essentially a redo.  That's how it feels

17    to us.  And if we are correct, that should chill the blood of

18    every defense attorney who negotiates a deal with the United

19    States.

20          In addition, we have -- the central allegation here is

21    trafficking, and obviously it is useful and relevant to make

22    inquiry as to why the trafficking law was passed.  It is to

23    cover abhorrent conduct, where young girls are kidnapped, they

24    are fooled, they are forced to come usually to unfamiliar

25    places, work in brothels where they service 15, 20 guys in a

j782epsC kjc

1    day.  They can't leave or else their families are threatened.

2    This is dreadful conduct.

3           I remember an occasion when the Attorney General Eric

4    Holder and I think Director Comey had a press conference

5    establishing this as a law enforcement priority.  Every

6    sensible person in the world would think that this is the exact

7    right thing law enforcement should do.

8           This is not this case.  There was no violence.  There

9    was no coercion.  There was no intimidation.  There is no

10   deception.  The bottom line, if you take a fair look at the

11   facts of this case as alleged and in the record, you may come

12   to the conclusion there was prostitution involved and maybe a

13   lot of it, but that doesn't mean that the person involved is a

14   pedophile, a rapist or, heaven knows, a trafficker.  Just --

15          THE COURT:  Well, if the women involved were under 18,

16   isn't that rape?

17          MR. WEINGARTEN:  My understanding --

18          THE COURT:  Legally they are incapable of consent, are

19   they not?

20          MR. WEINGARTEN:  Well, it could be statutory rape.

21          But what I am talking about is trafficking and why the

22   statute was passed, and obviously the statute was passed to

23   protect women from the horrors that occur in such settings, and

24   that is light years removed to what happened in this case.

25          So what about bond?  I would suggest that the

j782epsC kjc

1    traditional issues that we look at, the issues involved, let's

2    start with that, we believe we have extremely powerful motions

3    relating to the government seeking two bites at the apple and

4    for due process reasons, double jeopardy reasons, we don't

5    think that will stand.  We also think fundamentally what's at

6    issue here is not trafficking.  That's not why the statute was

7    passed.

8            The risk to others, what we have here is at least ten

9    years post incarceration in the State of Florida of conduct

10   that has never been challenged by anyone until now.  The

11   registration requirements are onerous.  He is under constant

12   surveillance.  Law enforcement knows, if they choose to look,

13   exactly where he is at any time.

14           The risk of flight, what is true is from the moment of

15   Judge Marra's litigation in the Southern District of Florida,

16   the defendant knew that there would be challenges to the NPA.

17   From 2013 on, there were representations made in court that

18   that challenge was ongoing, and the defendant never sought to

19   flee, never anticipated a time when he would flee, continued to

20   live his law-abiding life.  So the risk of flight, I think, is

21   dramatically overstated in the government's presentation.

22           I think the traditional remedies that the court finds

23   appropriate in case after case -- a large cash bond; passport

24   relinquished; waiving extradition; a bracelet on; some form of

25   supervision that is adequate to guarantee his appearance, it

j782epsC kjc

1    will be child's play to find that; bonds from other people,

2    surety bonds from other people.

3              Because we have not had an opportunity to see our

4    client until today and because we have just received the

5    government's submission, what we would like to do is have the

6    opportunity to sit down and put together a bail package, a

7    coherent bail package in writing and provide it to the court.

8              I would point out on the obstruction allegation --

9              THE COURT:  Let me ask you this -- sorry to interrupt

10   you -- do you want to adjourn the detention hearing?  Under the

11   statute, you have up to three days.

12             MR. WEINGARTEN:  What I would like is to have until

13   the end of the week to provide something in writing, a specific

14   recommendation in writing.

15             THE COURT:  So you want to adjourn a determination of

16   bail?

17             MR. WEINGARTEN:  Yes.

18             THE COURT:  Is there any objection to that from the

19   government?  The defendant is detained in the interim under

20   3142(f).

21             MR. WEINGARTEN:  Right.

22             MR. ROSSMILLER:  Your Honor, we certainly don't object

23   if the defendant is consenting to detention with leave to make

24   a further application.

25             I think the government would like at least a brief

j782epsC kjc

1    opportunity to respond to some of those points, to the extent

2    that the defense is arguing that Mr. Epstein should be granted

3    bail as a general matter and the court is going to consider

4    those arguments.

5            THE COURT:  Well, the court always considers the

6    parties' arguments.

7            But let me just come back to Mr. Weingarten for a

8    minute.  Mr. Weingarten, under the Bail Reform Act you are

9    entitled to a continuance of three days, which I guess would

10   take us to Thursday.

11           MR. WEINGARTEN:  Right.

12           THE COURT:  The other alternative, I guess, if you

13   want to *de facto* extend that three days is consent to detention

14   without prejudice.

15           MR. WEINGARTEN:  We estimated that by Thursday we

16   could get you something in writing and then appear back before

17   you at your convenience.

18           THE COURT:  Okay.  Do you want to schedule it -- well,

19   I think Thursday's proceedings right now would be in front of

20   Judge Berman unless he wants to send it back to me for bail,

21   but do you want to put this down for detention hearing on

22   Thursday?

23           MR. WEINGARTEN:  Can I make one point that I don't

24   want to forget that I think is extremely important?

25           THE COURT:  Go ahead.

j782epsC kjc

1          MR. WEINGARTEN:  The last thing we did today was

2     refuse to answer questions.  What we said at Pretrial is heaven

3     forbid we make a mistake, and in terms of assets, we wanted to

4     be precise.  So there was no refusal.  There was a request for

5     time to supplement.  That was accepted.  And that's part of the

6     reason we want to sit down and make sure we get our information

7     correct to provide to the court.

8          THE COURT:  All right.

9          MR. WEINGARTEN:  Can I make one other point?

10          THE COURT:  Sure.

11          MR. WEINGARTEN:  In terms of the obstruction, I think

12     it is such a significant part of our argument that the conduct

13     at issue is ancient.  It is from 2002 to 2005.  So obviously if

14     the defendant is a threat to obstruct justice, the court needs

15     to take that into account.  The allegations raised -- and I

16     just read them briefly because we just got the government's

17     letter -- relate to negotiations between the feds and the

18     defendant.  Back when the Southern District of Florida was

19     attempting to find an appropriate remedy, there were

20     discussions going back and forth:  Can we squeeze you into this

21     statute?  And it didn't work, and it didn't work because there

22     is no factual basis.  That is the reference to the alleged

23     obstruction.  Not obstructive acts.  Instead, the feds in

24     Florida agreed to the plea to the state offense because there

25     was no appropriate statute that covered conduct that was

j782epsC kjc

1    proveable.  That is the answer to the obstruction issue.

2               THE COURT:  All right.  So you want to adjourn the

3    detention hearing until Thursday?

4               MR. WEINGARTEN:  Yes.

5               THE COURT:  All right.  Is there any objection to that

6    from the government?  I think under the statute he is entitled

7    to three days.

8               MR. ROSSMILLER:  That is, of course, fine, your Honor.

9               I think we would like just a very brief opportunity to

10   respond to some of those arguments so that they don't sort of

11   hang with the court for three days unresponded to.

12              THE COURT:  All right.  Go ahead.

13              MR. ROSSMILLER:  Just very briefly, your Honor, I

14   think a lot of that discussion was entirely orthogonal to the

15   issues here.

16              But just very briefly, with respect to the charges

17   here, there is simply no force required for underage victims.

18   A grand jury has properly returned an indictment, and these are

19   fact issues that are being presented in large part.

20              Certainly the concept of child prostitution is,

21   frankly, offensive and not recognized in federal law.  The idea

22   that children can consent to sex and be prostitutes is beyond

23   the realm of federal law which contemplates trafficking, which

24   is what has been charged here.  Mr. Weingarten is free to argue

25   to a jury that trafficking minors was only statutory rape or

j782epsC kjc

1    that those victims weren't treated as badly as the parade of

2    horribles he has in mind.  But for now the question is whether

3    the defendant's attendance can be assured.

4              And with respect to the nonprosecution agreement --

5              THE COURT:  I'm not sure I would refer to something as

6    only statutory rape.  The use of the word "only" before

7    "statutory rape" I'm not sure sits well.  But go ahead.

8              MR. ROSSMILLER:  And I agree, your Honor.

9              With respect to the actual substance, the Southern

10   District of Florida has represented in public filings that the

11   nonprosecution agreement was limited to the Southern District

12   of Florida, and we can litigate that in a motion to dismiss,

13   but it is simply not relevant here.

14             With respect to the statute of limitations,

15   Mr. Weingarten says that the conduct is old.  He did not say

16   that that it is beyond the statute of limitations because it is

17   not.

18             And, finally, it is not the same conduct.  Some of the

19   conduct overlaps.  Some of the conduct does not.  And in

20   particular, one of the two counts of the indictment is

21   predicated exclusively on New York victims.

22             So for all of those reasons, we just ask the court to

23   consider those responses as it awaits the defendant's filings

24   later this week.

25             MR. WEINGARTEN:  Can I just make one point to clarify?

j782epsC kjc

1          THE COURT:  Go ahead.

2          MR. WEINGARTEN:  On the statutory rape thing, I had a

3     senior moment.  There is no statutory rape because there is no

4     penetration, and that is the answer to that question.

5          THE COURT:  All right.

6          We will set this down for a detention hearing on

7     Thursday, July 11, for the continuation of the detention

8     hearing.  Thursday, July 11, at 2 p.m.

9          The defendant is detained at least until the

10    continuation of the detention hearing pursuant to 18 United

11    States Code 3142(f).

12         I have been advised by Judge Berman that he wants to

13    see counsel right after these proceedings.  Judge Berman's

14    courtroom is 17B.  So counsel and Mr. Epstein should go to 17B.

15         All right.  Anything else from the government?

16         MR. ROSSMILLER:  Your Honor, ordinarily we would ask

17    to exclude speedy trial time, but I think because we are going

18    directly to Judge Berman, we have no such application.

19         THE COURT:  Mr. Weingarten, anything else?

20         MR. WEINGARTEN:  No, thank you, your Honor.

21         THE COURT:  Mr. Weingarten, anything else?

22         MR. WEINGARTEN:  No, your Honor.

23         THE COURT:  All right.  Thank you all.

24                              oOo

25