*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

July 16, 2019

<u>VIA ECF</u>

*REQUEST TO FILE PARTIALLY*
<u>*UNDER SEAL*</u>

The Honorable Richard M. Berman
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

    Re:    *United States* v. *Jeffrey Epstein*, 19 Cr. 490 (RMB)

Dear Judge Berman:

    The Government respectfully submits this letter to provide the Court with additional information in response to the Court's questions at the detention hearing held on July 15, 2019 (the "Detention Hearing").

### I. Payments to Potential Witnesses[1]

    In a July 12, 2019 letter, the Government informed the Court that the Government had recently obtained records from a financial institution ("Institution-1") that appeared to show the defendant had made suspicious payments shortly after the *Miami Herald* began publishing, on approximately November 28, 2018, a series of articles relating to the defendant, his alleged sexual misconduct, and the circumstances under which he entered into a non-prosecution agreement ("NPA") with the U.S. Attorney's Office for the Southern District of Florida in 2007.  The same series highlighted the involvement of several of Epstein's former employees and associates in the alleged sexual abuse.  At the Detention Hearing, the Court asked the Government to provide additional information about the individuals to whom these payments appear to have been made.

    First, records from Institution-1 show that on or about November 30, 2018, or two days after the series in the *Miami Herald* began, the defendant wired $100,000 from a trust account he controlled to ███████████████████████████████████, an individual named as a potential co-conspirator—and for whom Epstein obtained protection in—the NPA.  This individual was also named and featured prominently in the *Herald* series.

    Second, the same records show that just three days later, on or about December 3, 2018, the defendant wired $250,000 from the same trust account to ███████████████████, who was

---

[1] For the reasons set forth at the Detention Hearing, and with the consent of the Court, the Government is redacting the identities of these individuals in the publicly filed version of this letter.

Hon. Richard M. Berman
United States District Judge
July 16, 2019
Page 2

also named as a potential co-conspirator—and for whom Epstein also obtained protection in—the NPA. This individual is also one of the employees identified in the Indictment, which alleges that she and two other identified employees facilitated the defendant's trafficking of minors by, among other things, contacting victims and scheduling their sexual encounters with the defendant at his residences in Manhattan and Palm Beach, Florida. This individual was also named and featured prominently in the *Herald* series.

## II. Police Report

During the Detention Hearing, the parties referenced a redacted copy of a Palm Beach police report, which was annexed to the Government's July 12, 2019 detention memorandum. At the Court's request, the Government has provided a supplemental copy of the police report previously filed, with information referred to in open court unredacted. The updated copy of the police report is attached as Exhibit A.

## III. Foreign Passport

During the Detention Hearing, the Government informed the Court that it had recently learned that law enforcement agents had seized what appears to be an expired foreign passport (the "Foreign Passport") from a safe in the defendant's Manhattan residence during the execution of a search warrant on or about July 6, 2019. The Foreign Passport has a photograph that appears to depict the defendant, but lists a different name. Photographs of that passport are annexed hereto as Exhibit B. In the same safe, agents discovered what appears to be an expired United States passport issued to the defendant, in his true name, within three years of the date on the Foreign Passport. A photograph of that United States passport is annexed hereto as Exhibit C, so that the Court may compare the passports, both of which appear to depict the defendant. Because Exhibits B and C contain personally identifiable information and sensitive information relevant to the ongoing investigation, the Government respectfully requests that Exhibits B and C be filed under seal.

The Government is attempting to obtain additional information about the Foreign Passport, including how it was obtained and whether the passport is genuine or fabricated. But the defendant's possession of what purports to be a foreign passport issued under an alias gives rise to the inference the defendant knows how to obtain false travel documents and/or assume other, foreign identities. This adds to the serious risk of flight posed by the defendant.[2]

---

[2] The Government has asked defense counsel to advise whether the defendant is currently, or has been in the past, a citizen or legal permanent resident of a country other than the United States. To date, defense counsel has declined to respond. Certainly if the defendant is, or has been, a citizen or permanent resident of another country, that would add significantly to the overwhelming evidence of risk of flight.

Hon. Richard M. Berman
United States District Judge
July 16, 2019
Page 3

### IV. Cash and Diamonds

At the Detention Hearing, the Government informed the Court that diamonds and cash were seized from a safe in the defendant's Manhattan residence. The Court inquired as to the value of these items. After conferring with law enforcement agents who have reviewed the materials from the safe, the Government has learned that the safe contained more than $70,000 in cash. In addition, the safe contained 48 loose diamond stones, ranging in size from approximately 1 carat to 2.38 carats, as well as a large diamond ring. The Government is currently unaware of whether the defendant maintains similar stashes of cash and/or jewels at his multiple properties, or in other locations. Such ready cash and loose diamonds are consistent with the capability to leave the jurisdiction at a moment's notice.

### V. Conclusion

For the reasons set forth herein, in the Government's July 8, 2019 and July 12, 2019 detention memoranda, and on the record at the Detention Hearing, the Court should order that the defendant be detained pending trial. The defendant cannot meet his burden of overcoming the presumption that there is no combination of conditions that would reasonably assure his continued appearance in this case or protect the safety of the community were he to be released.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By: ___/s_____
Alison Moe / Alex Rossmiller / Maurene Comey
Assistant United States Attorneys
Southern District of New York
Tel: (212) 637-2225 / 2415 / 2324

Cc:     Martin Weinberg, Esq., and Reid Weingarten, Esq., *counsel for defendant*

```
Date:  ███████         PALM BEACH POLICE DEPARTMENT           Page:     ██
Time:  ███████                Incident Report                 Program:  ██
------------------------------------------------------------------------
Case No. . . . :  ██████████                                  (Continued)
                         Entered By.:  ████████████████         ██
```

On May 22, 2006, I received several phone calls throughout the day from ██████, who stated he had been followed aggressively by a private investigator. ██████ stated that as he drove to and from work and running errands throughout the county, the same vehicle was behind him running other vehicles off the road in an attempt not to lose sight of ██████'s vehicle.

I explained to him as Mr. Epstein had retained new legal council it was possible it would be new private investigators following him to observe his daily activities. I also explained to him that there was a meeting scheduled with ██████████████████ and Attorney Jack Goldberger at ██████████████████ scheduled on June 1, 2006 at 9:00 am. I attempted to call ██████████████ to inform ██ of the private investigators following ██ however; ████████████████████████████████████████████████████████████████.

On May 23, 2006, I received other phone calls from ██ and ██████ who advised they were able to acquire the private investigators license plate information. The subject following them was again driving very aggressively and caused ██████ to run off the road. ██████ stated the vehicle is a green Chevy ██████ bearing Florida tag ██████. The vehicle is registered to ██████████████ of ██████ Florida. ██████ is employed with ██████ Investigations from ██████ Florida. ██████ is a licensed Private Investigator in the State of Florida.

Since the discovery of the threat made against one of the victims in this case ████, I requested subpoenas for all calls made to and received from ██████████ during the month of March 2006 for her cell phone and home phone. I had confirmed with ████████████ ██████████ the exact dates of Spring Break for 2006.. The Spring Break was from March 4, 2006 through March 12, 2006. I received a subpoena from ██████████ with all calls made during the month of March 2006. I reviewed the 989 calls made and received during the month of March 2006. I observed on March 7, 2006, ██████ made and received thirty five calls during that day.

```
Date       Time      Seconds   In/Out     To/From
7-Mar-06   11:03 AM  492       Outbound   ██████████

7-Mar-06   11:16 AM  6         Inbound    ██████

7-Mar-06   11:22 AM  887.2     Inbound    ██████████

7-Mar-06   11:37 AM  48        Outbound   ██████████

7-Mar-06   11:39 AM  28.2      Inbound    ██████████

7-Mar-06   12:02 PM  727.2     Inbound    ██████████
```

The table reflects the date of the calls, time of day (EST), duration

```
Date:                          PALM BEACH POLICE DEPARTMENT                       Page:
Time:                                 Incident Report                             Program:

Case No. . . . :                                                        (Continued)
```

of call in seconds, inbound or outbound calls and calls made to or from ▉▉▉ phone. On March 7, 2006, at 11:03 am, ▉▉▉ made a call to the victim ▉▉ which lasted 492 seconds (8 minutes and 2 seconds). The victim then returned the call at 11:16 am which lasted 6 seconds. The victim then made contact with ▉▉▉ at 11:22 am for 877.2 seconds (14 minutes and 6 seconds). These sequences of calls were consistent with what the victim had described to me on the date of the intimidation. Immediately after speaking with the victim, ▉▉▉ makes a call to ▉▉▉▉▉ Epstein's assistant, which lasts for forty-eight seconds. A call is then immediately received, a telephone number registered to a Corporation affiliated with Jeffrey Epstein located at 457 Madison Ave in New York. An extensive computer check revealed 457 Madison Ave is a business address in which Epstein has his corporations assigned to. Epstein had corporation attorney, ▉▉▉▉▉ register the businesses and register himself as an agent. I also observed Epstein has his El Zorro Ranch Corporation, New York Strategy Group, Ghislaine Corporation, J Epstein and Company and the Financial Strategy Group registered to this same address. Finally, a third call is received by ▉▉▉ at 12:02 pm from the same corporate number which lasts 12 minutes and 1 second. It should be noted that there is no further contact with either the victim during the month of March or April of 2006. I also noted that there was no further contact with ▉▉▉▉▉ or Jeffrey Epstein during the remainder of the month of March or April 2006.

On June 1, 2006, ▉▉▉▉▉▉▉▉ telephoned me to inform me of the meeting that occurred with Atty. Jack Goldberger and ▉▉▉ reference this case. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

Inv Continues.