LAW OFFICE OF
# MARC FERNICH

MARC FERNICH maf@fernichlaw.com
ALSO ADMITTED IN MASSACHUSETTS

810 SEVENTH AVENUE, SUITE 620
NEW YORK, NEW YORK 10019
212-446-2346
FAX: 212-459-2299
www.fernichlaw.com

July 16, 2019

**BY ECF**

Hon. Richard M. Berman
USDJ-SDNY
500 Pearl St.
New York, NY 10007

Re:   *US v. Epstein*, 19 CR 490 (SDNY)

Dear Judge Berman:

In response to requests from the Court and certain arguments made yesterday by the government, we write to supplement Jeffrey Epstein's request for bail.

**First**, make no mistake about the crux of the government's detention argument and its necessary implications. Stripped to its core, the government's position – as urged in its letters and echoed again yesterday – distills to this: the nominally rebuttable remand presumption (connected with 18 USC § 1591 charges)[1] plus Epstein's

---

[1] To be clear, Epstein contends that § 1591 and the concomitant remand presumption do not contemplate or cover the core conduct at issue here: performing sexual

Hon. Richard M. Berman
July 16, 2019
Page 2

wealth creates an *irrebuttable* presumption whereby no condition(s) can reasonably assure personal appearance or protect the public. The Court should reject the government's misguided effort to effectively create a *per se* rule.[2]  Indeed, for the government, there's literally *nothing* a person of Epstein's means could say, do or pledge to rebut the operative presumption and make himself eligible for release.

---

massages for money. *See Fierro v. Taylor*, No. 11-CV8573, 2012 WL 13042630, at *3 (SDNY July 2, 2012) (holding that purchasers of sex from minors fall outside § 1591's ambit).

[2] *E.g.*, 7/15/19 Tr. 11 ("even if the defense were able at some point to rebut the presumption by providing some more information, there simply is no way that they can meet the standard here"); 7/12/19 Ltr. 5 ("even assuming the defendant's assets are *presently* in the United States, nothing … would prevent the defendant from transferring liquid assets out of the country quickly and in anticipation of flight or relocation. The defendant is an incredibly sophisticated financial actor with decades of experience in the industry and significant ties to financial institutions and actors around the world. He could easily transfer funds and holdings on a moment's [notice] to places where the [g]overnment would never find them so as to ensure he could live comfortably while a fugitive."); *id.* ("even were the defendant to sacrifice *literally all* of his current assets, there is every indication that he would immediately be able to resume making … tens of millions of dollars per year outside of the United States…. [T]here would be little to stop the defendant from fleeing, transferring his unknown assets abroad, and then continuing to … earn his vast wealth from a computer terminal beyond the reach of extradition.") (footnote omitted); *id.* 7 ("the notion that *any* individual co-signer could meaningfully secure a bond for this defendant strains credulity").

Hon. Richard M. Berman
July 16, 2019
Page 3

That cannot be the law. Such a construction turns the statute's plain text – expressly providing that the presumption is "[s]ubject to rebuttal," and otherwise mandating bail on the "least restrictive" conditions that reasonably assure the defendant's presence and community safety – on its head. It defies legislative intent. It thwarts the presumption of innocence. And it violates the Fifth, Sixth and Fourteenth amendment rights to due process, counsel, a defense and equal protection, not to mention the Eighth Amendment guarantee of bail – all based on a suspect if not invidious classification. To be sure, wealthy defendants do not deserve preferential treatment. But they certainly shouldn't be singled out for *worse* treatment – in effect, categorically disqualified from bail, at least in a presumption case – on the basis of their net worth.

**Second**, it bears emphasis that the presumption is hardly an insurmountable bar to release in a § 1591 prosecution.[3] To the contrary,

---

[3] *E.g.*, *US v. Brinson*, No. 13-CR-04-GKF, 2013 WL 11305792 (N.D. Okla. Feb. 8, 2013); *US v. Afyare*, No. 3:10-cr-00260, 2011 WL 1397820 (M.D. Tenn. April 13, 2011); *US v. Gardner*, 523 F. Supp. 2d 1025 (N.D. Cal. 2007).

Hon. Richard M. Berman
July 16, 2019
Page 4

courts have determined that there *are* suitable conditions under which

defendants accused of trafficking minors are bailed – notwithstanding

the remand presumption.

**Third**, as apparent from Epstein's initial financial disclosure, his

finances are fairly complex. It would be impossible for Epstein – given,

among other impediments, his detention, inability to quickly access

pertinent records, and inability to quickly make a precise valuation of

particular assets – to provide a sufficient financial statement by the

Court's 5 pm deadline. Epstein certainly recognizes the Court's request

for further transparency and is committed to providing a complete and

accurate disclosure. Accordingly, we propose that the Court preliminarily

accept the initial disclosure proffered last Friday and, if intending to

grant bail, include a release condition directing Epstein to tender a

comprehensive forensic accounting of his finances as expeditiously as

practicable. Joel Podgor, Partner Emeritus at prominent Manhattan

accounting firm Baker Tilly Virchow Krause, LLP, has agreed to conduct

the forensic investigation and prepare a report rapidly. As counsel said

Hon. Richard M. Berman
July 16, 2019
Page 5

during the July 15 argument, Epstein will agree to any monetary condition – consistent with his Sixth Amendment need to retain counsel and pay ordinary expenses, which, at the Court's discretion, could be subject to supervision by a Court-appointed trustee – that collateralizes his assets as a condition of release.

**Fourth**, to the extent the government complains Epstein lacks meaningful domestic ties, we clarify and emphasize that his brother Mark, a U.S. resident, stands prepared to co-sign and secure a release bond in the full amount of his "own net worth,"[4] which exceeds $100 million – tangible proof of his certainty that Epstein will appear as necessary.

**Fifth**, in response to the Court's inquiry about Epstein's New Mexico registration status, the state's Public Safety Department formally advised in August 2010 that "you are not required to register with the State of New Mexico … for your 2008 Florida conviction of Procuring Person Under 18 for Prostitution." Nonetheless, in an abundance of

---

[4] 7/12/19 Ltr. 6 (footnote omitted).

Hon. Richard M. Berman
July 16, 2019
Page 6

caution and as an extra precaution, Epstein consistently notified the
appropriate New Mexico official, Detective Deborah Anaya, when he
spent any time at his residence there. (The underlying documents are
available upon request.)

**Sixth**, though some studies may well indicate that sex offender
recidivism rates "actually go[] up at 15 years," as Your Honor suggested
from the bench,[5] others reach the opposite conclusion. For example, a
respected study found that the relapse risk drops substantially the longer
a person remains sex-offense free in the community. [6] Another
determined that it's mistaken to think of anyone who's been offense-free
for 15 years as high-risk.[7]

---

[5] 7/15/19 Tr. 34.

[6] Hanson et al., "High-Risk Sex Offenders May Not Be High Risk Forever," *Journal of Interpersonal Violence* (March 2014), https://www.researchgate.net/publication/261069441_High-Risk_Sex_Offenders_May_Not_Be_High_Risk_Forever.

[7] Ira Mark & Tara Ellman, "'Frightening and High': The Supreme Court's Crucial Mistake About Sex Crime Statistics" (2015). *Constitutional Commentary*. 419. https://scholarship.law.umn.edu/concomm/419.

Hon. Richard M. Berman
July 16, 2019
Page 7

**Seventh**, to the extent third-party counsel (Mr. Boies) speculated that the November 28 and December 3, 2018 payments[8] were made to "witnesses who were cooperating with us"[9] in civil litigation, he is wrong. As explained in Court, the recipients were "long-time [Epstein] friends and employees"[10] – not putative victims – and they never cooperated with Mr. Boies. To the contrary, each invoked the Fifth Amendment and *refused* to testify when civilly deposed, respectively, in prior New York federal and Florida state civil proceedings. Subject to the protective orders in these proceedings, we would be pleased to provide relevant deposition transcripts.

**Eighth**, as for the Austrian passport the government trumpets, it expired 32 years ago. And the government offers nothing to suggest – and certainly no evidence – that Epstein ever used it. In any case, Epstein – an affluent member of the Jewish faith – acquired the passport in the

---

[8] 7/12/19 Ltr. 11.

[9] 7/15/19 Tr. 70-71.

[10] *Ibid.* 69.

Hon. Richard M. Berman
July 16, 2019
Page 8

1980s, when hijackings were prevalent, in connection to Middle East travel. The passport was for personal protection in the event of travel to dangerous areas, only to be presented to potential kidnapers, hijackers or terrorists should violent episodes occur.

**Ninth**, the Court is undoubtedly aware of the highly charged context surrounding this prosecution. In November 2018, media reports suggested that Epstein received a plea deal that amounted to a "slap on the wrist." Putting aside the robust negotiations leading to the non-prosecution agreement and the prison sentence Epstein completed, there's no denying that although certain witnesses through their attorney representatives,[11] the media – *e.g.*, The Miami Herald – and the public were all clamoring for his re-prosecution, Epstein traveled extensively over these eight months and invariably returned to the United States. That inescapable reality emphatically proves he won't flee and entitles him to release – on any and all conditions the Court deems appropriate.

---

[11] *See, e.g., Doe v. US*, CV 807-36 (SD Fla.).

Hon. Richard M. Berman
July 16, 2019
Page 9

     We thank the Court for its consideration and would be pleased to

provide any additional information at Thursday's appearance.

                Respectfully,

                 /s/

                Marc Fernich
                Martin Weinberg
                Reid Weingarten

cc:    All Counsel (ECF)