

**MEMO ENDORSED**

Sigrid McCawley
Telephone: (954) 377-4223
Email: smccawley@bsfllp.com

August 5, 2025

Hon. Richard M. Berman
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

Hon. Paul A. Engelmayer
U.S. District Court of the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Docket and file.

SO ORDERED:
Date: 8/5/25
*Richard M. Berman, U.S.D.J.*

**Re: Unsealing of Grand Jury Transcripts in *U.S. v. Epstein*, 19-cr-490 (RMB) and *U.S. v. Maxwell*, 20-cr-330 (PAE)**

Dear Judges Berman and Engelmayer,

    We write on behalf of Annie Farmer in response to the belated notice that we received from the Department of Justice on July 25, 2025, advising that the Court is seeking letters on behalf of victims setting out their positions on the proposed disclosures of Jeffrey Epstein's and Ghislaine Maxwell's grand jury transcripts.[1]

    By the Government's admission, "over one thousand victims" suffered from Epstein's and Maxwell's actions. To date, however, the combined forces of our country's law enforcement agencies have only ever arrested these two individuals in connection with crimes committed against countless young women and girls, and the Government's recent suggestion that no further criminal investigations are forthcoming is a cowardly abdication of its duties to protect and serve.[2]

---

[1] Ms. Farmer is a survivor of Epstein's and Maxwell's crimes and testified at Maxwell's trial. While the undersigned counsel has, at various times, represented hundreds of victims of Epstein and Maxwell aside from Ms. Farmer, the Department of Justice's notice did not identify the specific victims whose names, likenesses, or information may be subject to disclosure.

[2] Of those two, Epstein escaped justice through his apparent suicide, and Maxwell is now, to the victims' horror, herself attempting to escape justice by negotiating for herself a potential pardon



It is obviously impossible for two people to conduct a decades-long sex-trafficking enterprise involving thousands of victims without other individuals who participated in and facilitated these unspeakable atrocities.

The recent controversy surrounding the Government's decision to withhold information concerning Epstein's and Maxwell's crimes has largely ignored the victims' perspective. Ms. Farmer is thankful for the Court's invitations to state the victims' positions, and supports the unsealing of the grand jury transcripts, as well as the accompanying grand jury exhibits, with redactions only as necessary to protect victims' names, likenesses, and identifying information. Transparency is critical to justice, and the public has a legitimate interest in understanding the full scope of Epstein's and Maxwell's crimes, particularly where those actions caused lasting harm to others. While it was *not* the victims' decision to seek disclosure of the grand jury transcripts alone (as opposed to the much larger volume of information available in the "more than 300 gigabytes of data and physical evidence" in the Government's possession that should be disclosed as well), the instant motion for unsealing will help expose the magnitude and abhorrence of Epstein's and Maxwell's crimes.

In this case that involved a decades-long, systematic criminal scheme that shocked the conscience of the public, caused lasting harm to survivors, and raised credible concerns about the failures of institutional accountability, there is an especially compelling interest in transparency. Unsealing the grand jury transcripts will illuminate the scope of Epstein's and Maxwell's abuse, provide additional insight into those who enabled his abuse, and bring light to how these crimes were investigated and prosecuted. While grand jury secrecy serves important purposes, it is not absolute and under these circumstances the balance tilts in favor of disclosure.

1. **Given the Magnitude and Abhorrence of Epstein's and Maxwell's Crimes, the Unsealing of the Grand Jury Transcripts Is Appropriate.**

The Second Circuit has recognized that there are special circumstances when the release of grand jury records is appropriate based on the courts' supervisory authority over the grand juries they empanel and that the trial court has "wide discretion … in evaluating whether disclosure is appropriate." *In re Petition of Craig*, 131 F.3d 99, 102, 104 (2d Cir. 1997). In *Craig*, the Second Circuit outlined a non-exclusive list of factors that a trial court may consider when deciding whether "special circumstances warrant the release of grand jury transcripts. *Id.* at 106. We join the Government's arguments for unsealing under the *Craig* factors, *Epstein* Dkt No. 66, at 3–7. Two factors warrant additional discussion in light of the victims' position in favor of unsealing.

---

or commutation of her sentence. The victims of her crimes unequivocally object to any potential leniency that the Government may be considering offering Maxwell, a convicted sex trafficker.



### A. Why Disclosure Is Being Sought in Particular Case

Grand jury secrecy may serve legitimate purposes in ordinary cases, but this is no ordinary case. In addition to the public interest that the Government identifies, *Epstein* Dkt. No. 66 at 4–5, disclosure of the grand jury transcripts in this case serves the interest of Epstein's and Maxwell's victims in bringing light to Epstein's and Maxwell's horrific crimes. This transparency and accountability is a form of justice. Epstein is the world's most notorious sex offender, and his crimes span decades, with thousands of victims. Epstein was a calculated predator who preyed on minors and young women using wealth, deceit, and manipulation. Maxwell, his righthand woman, played a central role in recruiting, grooming, and trafficking Epstein's victims, oftentimes participating in the abuse. Her participation, and the complicity and participation of others, enabled Epstein to conduct a decades-long sex-trafficking scheme.

Given the magnitude and abhorrence of Epstein and Maxwell's crimes, unsealing the grand jury transcripts is not just appropriate, it is necessary to understand the full scope of the abuse and those who enabled it. For years, victims of Epstein's and Maxwell's crimes have been silenced, fearful of the repercussions of exposing the many powerful individuals in Epstein's network, many of whom have not yet been named or investigated. Unsealing the grand jury transcripts would allow additional important information to emerge without requiring the victims to expose themselves to the same ridicule, retaliation, and humiliation they would face if they were the ones to expose such information. The Government itself acknowledged that there are "over one thousand victims," [3] yet only a small fraction—approximately one-fifth—have received compensation, underscoring the continuing lack of full accountability for Epstein, Maxwell, and their co-conspirators. The interests of the victims should therefore weigh in favor of disclosure. *See Matter of Aiani v. Donovan*, 98 A.D.3d 972, 974 (2d Dep't 2012) (ordering disclosure of banking records requested in connection with grand jury proceedings based on the interests of the victims).

### B. Whether Witnesses to the Grand Jury Transcripts Who Might Be Affected by Disclosure Are Still Alive

This factor considers whether individuals who may be affected by the disclosure of grand jury materials may be adversely impacted by unsealing. This case presents a rare and compelling circumstance where the victims seek transparency, not secrecy. In *In re National Security Archive*, for example, where the proceedings held substantial historical importance and the living witnesses did not express any objection to the release, the Court found that the release of grand jury testimony was appropriate. 2008 WL 8985358, at *1–2 (S.D.N.Y. Aug. 26, 2008). The victims represented by the undersigned counsel who are still alive do not just passively support unsealing, but

---

[3] *See* U.S. Dep't of Justice, Federal Bureau of Investigation, Memorandum (July 6, 2025), https://www.justice.gov/opa/media/1407001/dl?inline.

3



affirmatively support unsealing, subject to appropriate redactions to protect their personal privacy. Their consent to disclosure should weigh in favor of unsealing under this factor. Further, because the Government intends to redact the names and identifying information of the victims, there is no risk that the privacy of the victims will be jeopardized. *In re Kutler*, 800 F. Supp. 2d 42, 50 (D.D.C. 2011) (procedures for reviewing transcripts to protect named individuals as needed "allay any remaining privacy concerns").

 2. **The Court Should Assess the Appropriateness of the Redactions.**

The grand jury transcripts should be released subject to narrowly tailored redactions of the names, likenesses, and identifying information of the *victims*. The Court should *not*, however, rubber stamp redactions to withhold from the public "information related to third parties who neither have been charged or alleged to be involved in the crimes with which Epstein and Maxwell were charged," *Epstein* Dkt. No. 66 at 7. Any effort to redact third party names smacks of a cover up. The Government does not elaborate on what protocol it is using to redact other "third party" names or which types of individuals it seeks to protect in this way. To the extent the Government for some reason seeks to redact the names of other Epstein and Maxwell affiliates on the basis that these individuals "neither have been charged or alleged to be involved" in their crimes, the Court should exercise its independent authority to ensure that any redactions are tailored to serve compelling interests. *See generally Brown v. Maxwell*, 929 F.3d 41, 50 (2d Cir. 2019) (even if materials are not considered judicial documents to which a presumption of public access applies, "a court must still articulate specific and substantial reasons for sealing such material").

 A. **Redactions of the Names and Identifying Information of the Victims Is Appropriate.**

The privacy interests of Ms. Farmer and other victims (as victims of sex abuse and human trafficking) are strong. In *Giuffre v. Maxwell*, Judge Preska repeatedly recognized the "gravity of the privacy interests" of "victims of Jeffrey Epstein's sexual abuse." *Giuffre v. Maxwell*, 2020 U.S. Dist. LEXIS 221599, at *16 (S.D.N.Y. Nov. 25, 2020). The Court explained that "[t]hose interests are particularly acute given that the psychological and emotional wellbeing of survivors of alleged sexual assaults may be implicated by such a broad disclosure." *Giuffre v. Dershowitz*, 2020 WL 5439623, at *2 (S.D.N.Y. Sept. 9, 2020). And "[t]hose interests weigh no less heavily" where "it is law enforcement seeking modification of the protective order instead of a private litigant." *Giuffre v. Maxwell*, 2020 U.S. Dist. LEXIS 221599, at *16. In *Doe 1 v. JP Morgan Chase Bank, N.A.*, Judge Rakoff recently found that the privacy interest of a victim of Epstein justified sealing because "[p]rotecting the identity of sexual assault survivors and the details of their assaults is traditionally considered private and has been widely recognized as a compelling reason to limit public access to [even] judicial documents." 742 F. Supp. 3d 387, 397 (S.D.N.Y.



2024). Thus, Ms. Farmer's and other victims' privacy interests as victims of Epstein and Maxwell weigh heavily in favor of the redactions of the victims' names and identifying information.

### B. Redactions of Names and Information Relating to Epstein and Maxwell's Co-Conspirators Are Improper.

The Government's original motion refers to a July 6, 2025 Memorandum that concluded that no evidence could predicate an investigation into uncharged third parties associated with Epstein's and Maxwell's criminal scheme. *Epstein* Dkt. No. 61 at 1–2. The Government purports to seek the unsealing of the grand jury transcripts to provide transparency for the public into the conclusions reached by the Memorandum. *Id.* To be clear, we do not agree that there is insufficient evidence to support investigations into third parties who enabled Epstein's and Maxwell's crimes and participated in them. Numerous individuals have yet to be investigated and several civil cases have been filed addressing other individuals' central involvement with Epstein's and Maxwell's sex trafficking.

As the Court acknowledged, there are "over one thousand victims" of Epstein's and Maxwell's crimes. *Epstein* Dkt. 63 at 4. Less than one-fifth of these victims have been compensated for the crimes committed against them, either through the now-closed Epstein Victims Compensation Fund or otherwise. To rectify this, there have been numerous civil cases filed that address third parties' central involvement with Epstein and Maxwell's sex-trafficking crimes. *See Doe 1 v. JP Morgan Chase Bank, N.A.*, Case No. 22-cv-10019 (S.D.N.Y.), *Doe 1 v. Deutsche Bank Aktiengesellschaft*, Case No. 22-cv-10018 (S.D.N.Y.); *Doe 3 v. Indyke*, Case No. 24-cv-01204 (S.D.N.Y.). To the extent any of Epstein's and Maxwell's enablers and co-conspirators who have thus far evaded accountability are implicated by the grand jury transcripts, their identities should not be shielded from the public. Though "[t]he privacy interests of innocent third parties" like the victims should be redacted, *see Gardner v. Newsday, Inc.*, 895 F.2d 74, 79 (2d Cir. 1990), there should be no similar protection for those third parties accused of wrongdoing.

*** 

Ms. Farmer strongly supports the release of Epstein's and Maxwell's grand jury transcripts, subject to appropriate redactions of the victims' names and identifying information. Unsealing the grand jury transcripts serves the interests of transparency, accountability, and restorative justice.

Respectfully submitted,

*/s/ Sigrid S. McCawley*
Sigrid S. McCawley

*Counsel for Annie Farmer*